All right. Court will next hear Baker v. Brown, number 20-6132. Mr. Riffle, you may proceed. You're on mute. You need to unmute. Sorry, Your Honor. My name is Craig Riffle, and I represent the Medicaid applicant, recipients, I guess. This is a Medicaid case. Briefly, in 2017, the Medicaid recipients sold assets in exchange for promissory notes, which complied with the federal statute, federal regulation, and established case law. The agencies reviewed those sales, those transfers, and approved benefits and paid benefits for a year. In 2018, the Medicaid recipients made subsequent loans. At that time, the Medicaid agencies took issue with the loans and raised a number of different issues. Now, what's important is two of those issues were not considered by the district court. This case was decided by summary judgment, and one of those issues being the effect of a subsequent note, the court found, the district court found that the agencies had abandoned that argument, and that's cited in Appendix 986. Additionally, whether the subsequent note is a deferral, the court specifically found it did not rule on that issue, and that's cited in Appendix 987 to 988. So, the only two remaining issues are whether the promissory notes that we're talking about are bona fide loans and trust-like devices. Is Adebayo Shinobolan's appeal, is that moot with the recipient's death? The question is, is it moot with the death? I don't believe it is, Your Honor, because the decision was issued before she died, and so I do believe if the decision would not have been issued before she passed away, then we would not have standing to bring it, but the case was opened before and appealed before she died. Is it moot now, though, because if we were to reverse, she would not be, we wouldn't, the court would be unable to order continuation of benefits? Well, if you reverse, then I think it's subject to being moot and could be moot at that time. I don't think it is moot until you act. All right. So, anyway, unfortunately, the Medicaid rules and regulations do not give us any guidance as to whether we have bona fide loans or trust-like devices. The, both the Supreme Court and this circuit has relied on the POMs, which is passed or promulgated by the Social Security Administration to define whether you have a bona fide loan or a trust-like device. Now, the district court was correct in citing the right POM. In other words, for bona fide loans, the district court cited, it's 1120.220 and recognized that what we have here, subparagraph D, what we have here is an informal loan between individuals who are not in the business of loaning money. And that provision specifically says that a, that the informal loan is bona fide if it meets the following requirements, there are five requirements. What's critical, I think, if you read further, subparagraph E in that same POM goes on to say, and its direction, it says, follow these procedures to determine whether an informal loan is bona fide. And so what's happened here where the district court has erred is the district court has gone beyond those five criteria. Now, it's undisputed. Is a bona fide loan necessarily made in good faith? I mean, isn't that sort of what's, what, what the argument against you is, so okay, we'll give you the five factor test, but you still have to show it's in good faith. And when we have this note exchanging process that may technically meet the letter of the law, that when the son is the power of attorney, and they're flipping these notes back and forth, that it shows a lack of good faith. Therefore, even if you can show that it may be bona fide, the notes bona fide, there's no good faith. Well, the Social Security Administration does not require that. I mean, I'm not saying there was good faith or not. I mean, what I'm saying is that's not part of the test. We do believe they were made in good faith. And the reason we, I say that is because the previous notes were paid. We had expert testimony from Bob Luttrell, as well as Mr. Klingenberg, who was hired by the agencies who testified that, yes, payments were made under those notes. In other words, the notes were being followed. The fact that the additional notes were extended is not prohibited by anything, but they had actually made, in fact, the payments made on the 2017 notes were almost seven times what the payments on the subsequent notes were going to be. So, you know, I do believe they're in good faith. But the problem that we obviously have is we have the Social Security Administration specifically telling us that you follow those five factors. And not only did they do that in the Palm, but they also do that in the Landry case. That was cited by the appellants. And there was a correspondence which Landry took into evidence from a regional director, Paul Kralik, in which he said that with an informal loan, good faith is limited to the subparagraph D. B-3, which you're referring to, Your Honor, is not involved in that analysis. And so the specific language itself specifically says that we have a bona fide loan. It's undisputed at trial that we met those elements. I mean, I don't believe that's in dispute. I think the dispute is whether these other arbitrary factors should be added to that. And the problem with the arbitrary factors is they go to negate the five elements. They specifically require holdings which are contrary to the five elements. Why are you focusing, and this confused me about both sides of positions in this case, why both sides are so focused on Palms? Because it seems to me that 20 CFR 416.1201 specifically defines what is a resource. So if 1201 A and C specifically address whether or not a promissory note constitutes a resource, why is the Palms relevant? Your Honor, I agree. And I was before this court a few years ago on the Gregert case arguing whether that very same promissory note was a resource. And this court held that it was not. This issue has been raised by the Medicaid agencies. And so in trying to find out what kind of test there is, I agree that if it meets the CFR, which it does, and this court has already even held that this exact note does, that it is not a resource. But we are here because they have alleged that it's bad faith. And the only direction we have, unfortunately, there isn't anything in the CFRs or the code. The only direction we have is look at the Palms and argue over those. Is Palms relevant because of Kaiser deference? What sort of deference is accorded to Palms? Well, they've given deference to it. And I'm sorry, I don't know exactly the level of it. I just know that both the Supreme Court and this court has looked to it to try to define those issues because Medicaid was codified as part of Social Security Act. And so a lot of Social Security rules will also be referenced or looked at whenever you're applying the Medicaid rules and interchangeably. So, Mr. Riffle, just to ask you about, if I understand it, the funds go from Ms. Rose to Gene, and then they go into an account in the name of Jivin LLC. Am I right so far? You're correct in Ms. Rose's case, yes. Okay. Well, I'm talking about Ms. Rose's case for right now. At his deposition, Ivan Rose said that Jivin was established to provide for her needs. If that's the case, then why weren't those funds available to her as countable resources? In his deposition, when he said referred to her needs, he first referred to his wife's needs. His wife has and he has needs for funds. His wife, Gene, has medical issues, which they're having difficulty paying. So when you use the pronoun her, that's what he was referring to in his deposition. Now, in addition- Well, counsel, in his deposition, he was asked about Jivin, and the question was posed, what was the purpose for this LLC? And the answer is to take care of mom's needs. Nelton, that was his answer. And as I was going to say, he also, in addition to that, created a line of credit to where if she needed funds, she could borrow those. Incidentally, that line of credit, she did draw on some of those funds. He did charge her interest, and the agencies treated that during that year period between 17 and 18 as a repayment on the note. All right. Well, countable resources or not, why isn't this arrangement similar to a trust? Your Honor, that goes to- Like a trust beneficiary. Why isn't it a trust-like situation? Okay. That goes to the second issue that the court ruled on, whether it's a trust-like device. And the POM that governs it has a specific four-step criteria that you have to follow. Now, out of the first two, we don't dispute that there was a transfer of property, but the POMs specifically say that the assets must be held in a fiduciary capacity as trustee beneficiary for the benefit of- It must be held for the benefit of the individual. What the evidence was, the agencies hired Mr. Klingenberg as an expert, and he reviewed those. That was their expert, and he testified there was no fiduciary relationship. This was a lending relationship. There were contractual duties, but the other problem is the end of- And I'm referring to Miller as well. They never held the assets themselves. In fact, they used the assets individually, which would be a breach of trust if a trust relationship was there. Additionally, during that year period, the agencies treated those payments under that revolving line of credit as advances. They didn't treat them as trust distributions themselves. They had all that information available to them. They gave credit for those payments. The agency's own expert is testifying that there's not a fiduciary duty under the notes, that there is a contractual duty, which is different. Now, other courts have looked at this in the district. There are four or five other courts have looked at that and came to that same conclusion that there is no trust-like device here. What's important though, Your Honor, to point out is this was disposed of by summary judgment. At the very least, that would be a fact question. There was conflicting evidence going back and forth both ways. At the very least, this should have been something that should have been set for trial and not disposed of by summary judgment because there is conflicting evidence in the record as to those elements. I'd like to reserve the rest of my time, if I may, if you don't have any questions at this time. Thank you, counsel. As I understand it, we'll next hear from Ms. Eades. Yes, Your Honor. Good morning. May it please the court. Counsel, my name is Susan Eades. I represent Appley Kevin Corbett, who serves as the CEO of the Oklahoma Healthcare Authority. I, along with my co-counsel, Mr. Pettifer for Oklahoma Department of Human Services, will be representing the Appley's this morning. Your Honor, I would like to begin by again emphasizing to the court that this is a unique situation wherein we have two individuals, the remaining appellants herein, one of them was dismissed previously, as this court is aware, who had substantial resources. Mr. Riffle made reference to the 2017 promissory notes. The value of the 2017 promissory notes for Appellant Rose was set at $304,015.20. The value of the 2017 promissory note for Ms. Schnobland was set at $207,400. Now, again, this appeal, as Mr. Riffle alluded to, is limited to the two issues brought by promissory notes. Actually, in the case of Ms. Rose, the third promissory note constituted being bonafide promissory notes or whether they constituted being trust-like devices. Could I ask a quick question about that? Yes, Your Honor. Can this court rely on the trust-like device theory when the state agency didn't rely on it? I know the district court did, but the state agency didn't rely on it to terminate the benefits. The administrative court, I don't think, gave specific consideration to the trust-like device issue, but I don't think that that changes the ability of us in response to classify those as trust-like devices upon consideration before the district court. It is part of the record in the district court. It was argued in the district court, and it's a part of the decision and determination of the substantiation of summary judgment for the now-appellees in this case. Were you counsel at the district court? Yes, Your Honor. You made that argument to the district court that these were trust-like devices? Yes. If I can, let me ask you a couple of questions about that. So, a trust-like device, I think you would agree, would not give the party that received the funds from the transferor, it wouldn't give that party any right to spend that money on himself, as opposed to the beneficiary. You agree with that, don't you? I believe that that would be the true intention of a trust-like device. Yes, it's intended for the beneficiary of usually one individual, one purpose. And in this case, is there any evidence in this case in the summary judgment record that suggested that Mr. Riffle's clients were not allowed to, or the borrowers, let's call them the borrowers to not have confusion, that the borrowers weren't allowed to spend that money on whatever they wanted? I don't think that there is evidence that there was any prohibition in that regard, but I certainly think that the fact that they were holding those proceeds for the benefit of their respective mothers was adequately proven in the record. I don't think there's any dispute about that fact. I think Mr. Riffle himself alluded to that. Okay, fair enough. So, I'll give you that. Let's say the record shows, and I think everybody probably agree with this, that they were holding that money with the idea that they could spend it on themselves, or they might spend it on mom, and they did spend it both ways sometimes. Yes, sir. Okay. So, I guess I'm just running, that I'm having a hard time, if that's the case, seeing one, a fiduciary duty, and two, a situation that's trust-like in that they had no ability to spend the money on anyone other than the beneficiary. My response to that, Your Honor, would be that the sons, with regard to the two remaining appellants, were all in the position of powers of attorney for those individuals. Mr. Riffle made comment with regard to the expert witness that we had hired in this case, and he specifically did not review the information with regard to the power of attorneys or look at issue, but that is the issue. They were powers of attorney for their respective mothers. They, therefore, undoubtedly had fiduciary obligations to their mothers, and they chose to shirk those fiduciary obligations to their mothers in the manner in which they allowed these loans to occur and in the manner in which they proceeded to control the money for their mothers and spend it not just for the benefit of their mothers, but also on other things in reality. But there's no doubt that the primary problem in response to Judge Carson's question is you've made an excellent argument that Jean Rose's husband is a fiduciary, but you haven't, at least to me, answered Judge Carson's question about whether Jean Rose should be treated as a fiduciary as a matter of law, since all she did was marry somebody who was a fiduciary. My wife is a fiduciary. That doesn't mean I'm a fiduciary. Yes, Judge Baccarat, but again, Ivan Rose had access to the proceeds. He was a signatory on the bank account for Jivin LLC, an LLC that its articles of organization specifically addressed was devised and developed for the purpose of caring for the needs of his mother, and so it ultimately is a blend in the fact that, yes, it's a unique situation that the wife is the one who is the borrower. However, they both had access to the funds, and he had fiduciary obligations, so I think that there is a carryover there. But how could Ivan's role as a fiduciary create as a matter of law a trust-like device that would require, as a matter of law, for Jean Rose to be a fiduciary? It seems to me that there's at least a fact question about whether or not she is a fiduciary, notwithstanding the fact that her husband and she had access, and he was a fiduciary. I'm just not following the logic of making her a fiduciary because of his access to the funds. But again, I think that that narrows the field, that there is a fiduciary obligation, I think, with regard to if it's your mother-in-law, ultimately, you can have a fiduciary obligation without being power of attorney because you come in under an LLC in which the purpose is to care for the mother or the mother-in-law, depending which role you're in. And I think that is how it applies, Your Honor, is that money was dedicated to caring for the mother, and that, through the development of the LLC, they both, Jean and Ivan Rose, had responsibilities that were fiduciary obligations. You don't have to be a trustee. It speaks to, in parentheses, the term a trustee, but there's no specific requirement that you have to be a trustee for it to be a trust-like device. And again, there's nothing that says you have to have to be able to construe it to be a trust-like device. Are the lenders in this case, are they competent? I mean, could they have signed these notes themselves? That issue was never examined. There was, in them being admitted to the nursing home, evidence that there was some competency issues based upon the reasons for their admissions, but no medical competency exam was administered to the women, to the appellants, essentially, Ms. Rose and Ms. Schnelblen. Now, their... So, let me ask you this. So, I don't want to speculate if it wasn't determined. So, if other than the fact that the sons had powers of attorney, other than that, do you have any evidence that they breached a fiduciary duty or that they were... I mean, what if the mothers were competent and blessed it? I mean, you have a problem then, don't you, with your fiduciary argument because the person to whom they owed the duty consented? Your Honor, there's been no evidence of that in the record whatsoever, that there was... But that's your burden, isn't it? I don't believe so. Ultimately, I think it's Mr. Riffle's burden because he's the one who set up the powers of attorney for these individuals. And as an attorney, you're responsible to know whether the individuals are giving consent and whether they are lucid and competent to do so. So, I think it's Mr. Riffle's burden to carry. So, while I agree that he shouldn't do that if they're incompetent, but I think you're the person who's contesting this transaction as being in violation of fiduciary duties, basically. That's your basic argument. And I think it's your burden to prove that there's been a breach. I don't think you can say, hey, there's a breach of fiduciary duty, we think, prove otherwise. No, but again, I think the focus is on that the monies were being held and accessible by these appellants in order to be able to provide for their care. And that's been shown by the record. Right. So, let me tell you what I think your problem is, at least from my perspective, and you can see if you can alleviate my concerns. From my perspective, I think you have a great case for showing that Mr., and I'll put it off on Mr. Riffle, that Mr. Riffle's structure here is sort of stinky, that it sounds unfair and overreaching, but it appears to be planning. In response to that, Your Honor, I would say first and foremost, that again, there is a repayment obligation that has to manifest itself in earnest that does not happen by this gaming of the system with the sequential promissory notes. Even if a payment is tendered, it's not realized, it's not effectuated. There's no aspect in which it affects the recipient by way of a resource because it's swept right back. And other than that, I would also like to defer to my co-counsel, Mr. Pettifor, because he's counsel for DHS, and seeing my time is starting to expire, he has comments to add with regard to the bona fide nature of the promissory notes. If I may. Before you proceed, Mr. Pettifor, with regard to whether it's a bona fide resource or not, can you comment on 20 CFR 416.1201 A and C? Because I did not understand why consideration of whether it's in good faith under POMS really has anything to do with it. Because to me, 1201 A and C expressly and unambiguously say that an obligation under a promissory note is not a resource if the promissory note is not transferable. It's illiquid. And under the regulation, it cannot be considered a resource. You gave him a revolving credit note that makes it cash. May it please the court. My name is John Pettifor, and I represent Justin Brown, Director of Oklahoma Department of Human Services. Your Honor, to answer your question, I believe that's because Medicaid is trying to prevent someone intentionally transferring assets to a promissory note, in this case, for example, and making it where it instantly becomes illiquid and they can't access it. Then the very next day, applying for Medicaid. And so that would be an illegal transfer to a promissory note. So that's why I think POMS tried to provide some guidance on that to prevent that sort of situation where you transfer your all your assets essentially to a promissory note and then put up your hands and say, well, I can't access this anymore. It might be, but how do I get by the language that says, quote, if a property right cannot be liquidated, the property will not be considered a resource of the individual or spouse? Well, I believe there are some other regulations that talk about transfers, illegal transfers, transfers that will be disqualifying and it will start a penalty period. And so I would believe whatever the federal statute is on illegal transfers would cover that. And there is an exception to transfers for promissory notes, but the POMS sort of gives us some guidance on how do we determine if a promissory note is eligible. Thank you. Yeah. And so here I would say, as far as bonafide, the district court in our case correctly points out there are two additional layers analysis. The note must be device. The courts in Sable and Landy also agreed must be made that loans were made in good faith and a separate determination on top of the five factors and POMS 1120.220 section D. So there's two parts. There's meeting the section D, subsection D and meeting the bonafide requirements. And the section, the appellant counsel relies on POMS 1120.220. He relies on subsection D, but subsection B is definitions and under definitions is a definition for bonafide, which is defined as legal under state law and made in good faith. And that's the catch here. B applies to subsection D therefore good faith analysis is required under the POMS. And that's what Landy tries to do is, is gives us some criteria to figure out what is good faith. And I'm saying I'm out of time, your honors, but if you have any further questions, I would be happy to answer them. Further, further questions. Okay. All right. I believe Mr. Riffle has some rebuttal time. Yes, your honor. Thank you. First of all, picking up where Mr. Petterford left off paragraph E specific of that same POMS specifically says to determine if it's bonafide, we follow paragraph D it doesn't say paragraph D and B this is paragraph D. And when you look at paragraph D it says an informal loan is bonafide if it meets the following. And it doesn't say the following plus something else. Now to pick up, first of all, to, to respond as an officer of the court, I can tell you that Ms. Rose and Ms. Snowden was competent. That was even asked about in deposition. The reason it was never presented is because it never went anywhere for the Medicaid agencies. But saying that's my burden would be like saying, I'm, I'm supposed to guess what their claim is going to be. That's not my burden to do that. If they had an issue and this whole discussion has shown why this shouldn't have been disposed of on summary judgment, they're very likely are fact issues here. But I think what is, I do need to clarify on Ms. Rose. It's been said that the money was handed and that it was held for Ms. Rose's benefit. The record is clear that the money was not held for her benefit. In fact, Jean Rose, Mr. Rose testified that his wife, Jean, expended some of it. And as Judge Carson pointed out earlier, you know, on a, if you, if you're a fiduciary, if you're a trustee of a trust, I can't spend that money for anybody, but the beneficiary. I can't just take it and spend it on my wife or spend on, and the Millers testified in their, in their depositions that they actually sold the house and kept the money and sold the minerals and kept the money themselves. So at the very least, we have a fact issue that should have gone to trial. But even when you look at the facts, it's in the record, they don't support that this is a trust because if you do, I mean, the Medicaid agencies haven't been able to point to any time when this money has been held exclusively and used for the benefit of that individual. And I would reiterate that fact and just point out the fact that, you know, their own expert said there's no fiduciary duty under these notes. If you have no questions, I thank you for your time. Thank you. Thank you, counsel, for both sides. We appreciate your arguments this morning. The case will be submitted. Counsel are excused.